## WENTWORTH vs. WEYMOUTH.

A. gave a note, not negotiable, to B. and was then summoned as his trustee in the process of foreign attachment. A. disclosed, that since the service of the writ, C. had informed him that the note was his property, and that B. acted as his agent in taking it. But C. having exhibited no *evidence* that the note was his, the trustee did not add, that he *believed* said statement to be *true*, or his *belief* that the property was C's, and he was thereupon charged, and afterward satisfied the judgment. In a suit against him on the note, in the name of B., for the benefit of C., it was held, that these facts constituted a good defence.

ASSUMPSIT on a promissory note for forty-five dollars, given by the defendant to the plaintiff, dated *March* 10th, 1832, and payable in *January* then next. The note was not negotiable, and the suit was brought for the benefit of *Francis Hill*. The defendant had tendered and brought into Court, $33,25, insisting that no more was due. — The case was submitted for the opinion of the Court upon the following agreed statement of facts, *viz:* —

In *September*, 1832, *Weymouth* was summoned as trustee of *Wentworth* in a process of foreign attachment, triable before a Justice of the Peace, and on the 20th of *October*, 1832, he made a disclosure before the Justice in the following words, viz: "On the 10th day of *March* last I gave *Wentworth* a note not negotiable for $45, which note is not yet paid — Since the service of the plaintiff's writ on me in this action I have been informed by *Francis Hill*, that the said note is his property — Said *Hill* shew me no assignment in evidence of property in said note — Said *Hill* further said that the note had been in the hands of said *Weymouth* for the purpose of giving up said note and taking a new note for the same which should be negotiable and payable to said *Hill* — My note to *Wentworth* was given for a yoke of oxen purchased by me of said *Weymouth*."

The oxen for which said note was given, were the property of of said *Hill*—and *Wentworth* in selling them and taking the note, acted as the agent of *Hill*, but did not disclose his agency to *Weymouth*. Immediately after the sale, *Wentworth* delivered the note to *Hill*, who then objected to the manner in which the

note was drawn, and requested *Wentworth* to take it back and exchange it for one payable to *Hill*, and negotiable. *Wentworth* took back the note for the purpose aforesaid, but *Weymouth* being absent several months, he did not get it exchanged but returned it to *Hill.*

In *September*, 1832, after the service of the trustee process, *Hill* informed *Weymouth* of these facts, and requested payment of the note. *Weymouth* refused to pay, until the trustee suit should be settled. *Hill* replied that he, *Weymouth*, might disclose that he, *Hill*, was the owner of the note and always had been. Of these facts, however, the only knowledge that *Weymouth* had, was derived from the declarations of *Hill*. The defendant was adjudged trustee in the Justice suit and has paid on the execution, $20,85.

*J. B. Hill*, for the plaintiff, insisted that the payment made by the defendant as trustee ought not to be allowed him in this suit, because the facts, as stated by him in his disclosure, shew that he was not trustee, and that he therefore should have appealed, whereby the error of the magistrate could have been corrected.

2. Because he did not state in his disclosure all the facts that had been communicated to him by *Hill* — which, if stated, would have procured his discharge as trustee. These facts shew conclusively, that at no instant had *Wentworth* any interest in the oxen or the note, and that both were at all times the property of *Hill* — and that immediately after the sale the note was passed to *Hill*, — and only returned again to *Wentworth* for a special purpose, not in anywise affecting the property in it.

3. Because the defendant omitted to state material facts, and misrepresented as to others — particularly in this, that he stated he gave the note for oxen purchased of *Wentworth*, without adding that they were the property of *Hill* — in stating that the note had been in the hands of *Wentworth*, for the purpose of being exchanged, without adding that it was immediately after it was made and delivered to *Hill* — and in omitting the reason why it was not exchanged. *Cushing's Trustee Process*, 217, 221. *Hawes & al.* v. *Langton & Tr.* 8 *Pick.* 67.

4. He should have stated his belief in the truth of the facts

stated in the disclosure.    Otherwise he should have taken no no-
tice of them.    *Cushing's Trustee Process*, 216, 221 ;  *Phil.
Dig.* 370.

*Hill*, not being a party to that suit, is not concluded by the
judgment, from showing that the note was his property.    *An-
drews* v. *Hening*, 5 *Mass.* 212.

This is not a case of *assignment* where the evidence of trans-
fer and property is to be exhibited to the trustee.    And it being
a Justice suit in which the owner of the property cannot be sum-
moned in to prove his title — the declaration of the trustee is to
be regarded as conclusive of the fact that *Hill* was in truth the
owner.

But even on the ground of an *assignment*, the plaintiff con-
tends that he is entitled to recover the whole amount of the note.
A chose in action may be assigned by *delivery* merely, which de-
livery is found in this case.    *Jones* v. *Witter*, 13 *Mass.* 304, and
15 *Mass.* 481.

Notice of the assignment may be given at any time before dis-
closure — and it is not necessary to exhibit the note at the time
of giving notice.    *Ammidown* v. *Wheelock*, 8 *Pick.* 470 ;  *Cush-
ing's Trustee Process*, 173.

*Allen* and *Appleton*, for the defendant, cited *Wood* v. *Par-
tridge*, 11 *Mass.* 488 ;  *Foster* v. *Sinkler* & *Tr.* 4 *Mass.* 450 ;
*Clark* v. *Brown*, 14 *Mass.* 271 ;  *Fisk* & *al.* v. *Weston*, 5
*Greenl.* 411 ;  *Hawes* & *al.* v. *Langton* & *Tr.* 8 *Pick.* 71 ;
*Adams* & *al.* v. *Cordis*, 8 *Pick.* 260 ;  *Dix* v. *Cobb*, 4 *Mass.*
511.

MELLEN C. J. — On the 10th of *March*, 1832, *Weymouth*
gave his promissory note to the plaintiff for $45,00, payable in
*January*, 1833.    The note was not negotiable.    In *September*,
1832, *Weymouth* was summoned as trustee of *Wentworth*, and on
his disclosure he was adjudged trustee, and has paid the plaintiff
in the trustee process, on execution of $20,85 cents, and has
tendered to the present plaintiff the balance of the note and costs,
being $33,25 cents, which sum has been brought into Court.    No
question has been made respecting the tender.    The only inqui-
ry is, whether the disclosure made by the defendant was a *full*

*one,* and such as he ought to have made, in the circumstances in which he stood; or whether he was adjudged trustee *because he did not disclose certain facts* in relation to the claim of *Francis Hill* to the sum mentioned in the note. In *Herring* v. *Andrews,* 5 *Mass.* 210, *Parsons C. J.* says, " We do not consider that a stranger to the suit in which a trustee is examined, is concluded by the examination from proving that there were other facts within the knowledge of the trustee, which he did not disclose, or that there was collusion between him and the plaintiff or defendant in such suit." If any facts were within the knowledge of the trustee and not disclosed, which, if they had been disclosed would have induced the court to discharge him, he cannot now avail himself of the judgment rendered in the trustee suit, as a defence to *this* action. We have before us no proof of collusion. The defendant in his disclosure says, " I have been informed by *Francis Hill* that the said note is *his* property" — " But he never shewed me any assignment in *evidence of his property :*" nor does it appear that *Hill* had any interest whatever in the note, except from his own declaration; or at least, that the defendant had any knowledge of the fact, except from his statement a short time prior to the disclosure. In *Hawes & al.* v. *Langton, and trustees* 8, *Pick.* 67, the court observe that " extrinsic facts have sometimes been introduced by the voluntary annexation of the evidence of them to the answers of the trustee, *he declaring upon oath, that he believes them to be true;* but if the trustee should refuse to annex such evidence, we think there is no power in the court to compel him." In the case before us there was no evidence in possession of the trustee which he could annex. It is urged that he should have disclosed all the facts which *Hill* told him prior to the disclosure; namely, that the oxen for which the note was given, belonged to *Hill,* and that *Wentworth* acted as his agent in the sale of them, though he did not disclose his agency, and that immediately after the sale, he delivered the note to *Hill,* who then objected to the manner in which it was drawn and requested to have the note changed for one negotiable and payable to himself. — Supposing all these facts had been disclosed, they are nothing but *Hill's declarations,* not on oath, and the same, thus presented to the Court, would have availed nothing,

unless the defendant had also sworn that he *believed the declarations were true*, according to the case of *Hawes & al.* v. *Langton*, just cited. Now what evidence have we that the defendant *knew* or *believed* those declarations to be true ? The case is totally silent on this head. The omission, therefore, of the defendant to disclose certain declarations of *Hill*, unsupported by any kind of evidence, and of the truth of which we have no evidence that the defendant could even *swear to his belief*, cannot in our opinion, defeat the defence predicated on the judgment in the trustee process and the satisfaction of it. The action cannot be maintained, and the plaintiff must be nonsuit.